UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KATHLEEN C.,

                            Plaintiff,                           **DECISION AND ORDER**

            v.
                                                                  1:24-CV-00237 EAW
COMMISSIONER OF SOCIAL SECURITY,

                            Defendant.
_____


## <u>INTRODUCTION</u>

Represented by counsel, plaintiff Kathleen C. ("Plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 5; Dkt. 7), and Plaintiff's reply (Dkt. 8). For the reasons discussed below, the Commissioner's motion (Dkt. 7) is granted, and Plaintiff's motion (Dkt. 5) is denied.

## BACKGROUND

Plaintiff protectively filed her applications for DIB and SSI on February 22, 2021. (Dkt. 3 at 22, 264-73, 274-78).[1]  In her applications, Plaintiff alleged disability beginning January 1, 2016.  (*Id.* at 22, 265, 274).  Plaintiff's applications were initially denied on January 19, 2022.  (*Id.* at 22, 139-58).  A hearing was held before administrative law judge ("ALJ") William Weir on July 28, 2023.  (*Id.* at 23, 36-71).  On November 1, 2023, the ALJ issued an unfavorable decision.  (*Id.* at 22-29).  Plaintiff requested Appeals Council review; her request was denied on January 23, 2024, making the ALJ's determination the Commissioner's final decision.  (*Id.* at 6-11).  This action followed.

## LEGAL STANDARD

### I.    District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g).  The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)

---

[1]     When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

(quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.   <u>Disability Determination</u>

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of

Regulation No. 4 (the "Listings"). *Id.* §§ 404.1520(d), 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id.* §§ 404.1509, 416.909, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* §§ 404.1520(e), 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id.* §§ 404.1520(f), 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* §§ 404.1520(g), 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I.    The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. §§ 404.1520 and 416.920. Initially, the ALJ determined that Plaintiff met the insured status requirements of the Act through December 31, 2022. (Dkt. 3 at 24). At step one, the ALJ determined that Plaintiff had engaged in

substantial gainful work activity from January 2017 through December 2017, but that there was also a continuous 12-month period during which Plaintiff did not engage in substantial gainful activity. (*Id.*). The findings in the decision applied to the periods where Plaintiff was not engaged in substantial gainful activity. (*Id.*).

At step two, the ALJ found that Plaintiff suffered from the severe impairment of chronic regional pain syndrome ("CRPS"). (*Id.*). The ALJ further found that Plaintiff's medically determinable impairments of hypertension, hyperlipidemia, moderate hiatal hernia, basal cell carcinoma, gastritis, gastroesophageal reflux disease, Barrett's esophagus, pulmonary fibrosis, asthma, post-traumatic stress disorder, and generalized anxiety disorder were non-severe. (*Id.* at 25).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.* at 26). The ALJ particularly considered the criteria of Listings 1.18 and 11.14 in reaching his conclusion. (*Id.*).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform the full range of sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a). (*Id.* at 27). At step four, the ALJ found that Plaintiff was able to perform past relevant work as a customer service representative as actually and generally performed. (*Id.* at 29). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (*Id.*).

II.    **The Commissioner's Determination is Supported by Substantial Evidence and Free from Legal Error**

Plaintiff asks the Court to remand this matter to the Commissioner, arguing that (1) the ALJ failed to properly consider Plaintiff's non-severe impairments; (2) the ALJ impermissibly based the RFC finding on his own lay opinion in the absence of any medical opinions; and (3) the ALJ failed to properly develop the record with medical opinion evidence. (Dkt. 5-1 at 8-17). Because the Court finds that the ALJ carefully considered Plaintiff's limitations and satisfied his obligations under the regulations, notwithstanding Plaintiff's failure to appear at multiple scheduled consultative examinations, remand is not required on this basis.

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). While an ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in h[er] decision," *id.*, an ALJ is not a medical professional, and therefore he "is not qualified to assess a claimant's RFC on the basis of bare medical findings." *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) (quotation and citation omitted). At bottom, "[a]n RFC finding is administrative in nature, not medical, and its determination is within the province of the ALJ, as the Commissioner's regulations make clear." *Curry v. Comm'r of Soc. Sec.*, 855 F. App'x 46, 48 n.3 (2d Cir. 2021) (finding it was proper for the ALJ "pursuant to his statutory authority . . . [to] consider[ ] the medical and other evidence in the record in its totality to reach an RFC determination"); *see also Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) ("Where . . . the record contains sufficient evidence from which

- 6 -

an ALJ can assess the claimant's residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." (quotations, citations, and alteration omitted)).

Plaintiff does not appear to contest the ALJ's finding that certain impairments were non-severe; rather, she contends that despite finding those impairments to be non-severe, the ALJ failed to account for them in the RFC. To that end, it is well-settled that an ALJ must consider both Plaintiff's severe and non-severe impairments when assessing the RFC. *See Parker-Grose v. Astrue*, 462 F. App'x 16, 18 (2d Cir. 2012) ("A RFC determination must account for limitations imposed by both severe and nonsevere impairments."); *see also Grant v. Saul*, No. 3:18-CV-00261 (KAD), 2020 WL 1307106, at *6 (D. Conn. Mar. 18, 2020) (explaining that an ALJ is required to consider non-severe impairments when fashioning the RFC).

Here, at step two, the ALJ assessed several non-severe impairments, including hypertension, hyperlipidemia, moderate hiatal hernia, basal cell carcinoma, gastritis, gastroesophageal reflux disease, Barrett's esophagus, pulmonary fibrosis, asthma, post-traumatic stress disorder, and generalized anxiety disorder.

The ALJ's decision specifically assessed Plaintiff's non-severe mental impairments in connection with the four broad areas of mental functioning (*i.e.*, understanding, remembering, or applying information; interacting with others; concentrating, persisting,

or maintaining pace; and adapting or managing oneself), and found that Plaintiff had no limitations in each of these categories. (*Id.* at 25-26).

For understanding, remembering, or applying information, the ALJ noted that Plaintiff does not need reminders to take care of personal needs, grooming, medication management, paying bills, and managing savings, and has an okay ability for following written and spoken instructions. Mental status examinations performed in 2021 and 2022 revealed normal mood and affect, good judgment, and normal memory skills, and the ALJ noted that Plaintiff displayed an adequate ability to understand, remember, and apply information during the hearing.

For interacting with others, the ALJ noted that Plaintiff has neighbors who help her complete household chores, Plaintiff reported talking on the phone and texting with relatives and friends, and her treatment records demonstrate her ability to interact appropriately with her medical providers.

For concentrating, persisting, or maintaining pace, the ALJ noted that Plaintiff indicated that she does not need reminders to take care of personal needs or to take her medicines, has an okay ability for following written and spoken instructions, and can finish

what she starts.  He also noted her ability to adequately concentrate during the hearing and answer all questions with specificity.

Finally, the ALJ explained that for adapting or managing oneself, Plaintiff lives alone in an apartment, seeks help from friends and neighbors, and is able to attend her medical appointments.

As to Plaintiff's remaining non-severe impairments, the ALJ explained that they were fully treated or did not cause any functional limitations.  Because no functional limitations were identified, any failure to discuss the impairments further was harmless in any event. *See Amparo v. Comm'r of Soc. Sec.*, No. 20-CV-10285 (JMF) (SDA), 2022 WL 3084482, at *11 (S.D.N.Y. July 19, 2022) ("[A]n ALJ's failure to mention non-severe impairments in formulating the RFC may be considered harmless error 'absent evidence that these impairments contributed to any functional limitations.'" (quoting *Ferreras-Matos v. Comm'r of Soc. Sec.*, No. 20 CIV 07106 (NSR)(JCM), 2021 WL 7287630, at *15 (S.D.N.Y. Nov. 15, 2021), *report and recommendation adopted*, 2022 WL 3084380 (S.D.N.Y. Jan. 31, 2022)).  But nonetheless, in conclusion, the ALJ stated that he "considered all of [Plaintiff's] medically determinable impairments, including those that are not severe, when assessing [Plaintiff's] [RFC]."  (Dkt. 3 at 25).  In total, the Court concludes that the ALJ's discussion of Plaintiff's non-severe impairments provided substantial evidence for his ultimate determination of Plaintiff's RFC.

Moreover, the ALJ's ability to assess Plaintiff's functional limitations in greater detail was curbed by the fact that there were no medical opinions from any treating source and Plaintiff failed to attend scheduled multiple consultative examinations.  Plaintiff argues

that the ALJ impermissibly relied on his own lay opinion to assess the RFC and attributes the lack of opinion evidence to a failure by the ALJ to comply with his duty to develop the administrative record.  The Court disagrees.

It is true that "[b]ecause a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record."  *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996).  However, the ALJ's duty to develop the record is not limitless.  "[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information. . . ."  *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (quotations and citation omitted); *see also Vay v. Comm'r of Soc. Sec.*, 382 F. Supp. 3d 267, 272 (W.D.N.Y. 2018) ("the ALJ's duty to develop the record is not limitless," and where there are no obvious gaps in the record, the ALJ is not required to seek additional information).

Here, the ALJ did review the medical evidence and longitudinal record before him, including Plaintiff's history of right lower extremity pain secondary to CRPS of the lower extremity and prior fractures of her right foot.  The ALJ noted that Plaintiff consulted a physician in the beginning of 2021 with complaints of chronic pain in her lower right limb and she was referred to a neurologist.  Plaintiff consulted the neurologist in July 2021, and a physical examination revealed a mildly antalgic gait and painful sensation to the touch on the right L3, L4, L5, and SI dermatome levels.  A spinal cord stimulator trial was recommended.  The next report of treatment of Plaintiff's right foot pain was not until March 3, 2023, during which time an examination failed to reveal any abnormalities.  At a

June 2023 follow up visit, Plaintiff reported that her pain was not improved, but she declined trying methadone as suggested. Ketamine injections were also recommended.

In addition to the sparse objective evidence supporting Plaintiff's claims of a disabling condition, the ALJ also noted that although Plaintiff alleged total disability since 2016, the record reflected that she worked in a full-time capacity in 2017 and was earning at substantial gainful activity levels during that time. The totality of the information in the record provided the ALJ with a sufficient basis to craft Plaintiff's RFC. Indeed, where a claimant has only minor impairments, "an ALJ permissibly can render a common[ ]sense judgment about functional capacity even without a physician's assessment." *Perkins v. Berryhill,* No. 17-CV-6327-FPG, 2018 WL 3372964, at *3 (W.D.N.Y. July 11, 2018). Here, Plaintiff's objective medical findings were largely normal, her treatment was conservative, and she worked at substantial gainful activity levels for a year-long period during the time she claimed to be totally disabled. Thus, substantial evidence supports the ALJ's determination even in the absence of medical opinion evidence.

But beyond that, the lack of medical opinion evidence from any examining source is due in large part to the fact that Plaintiff missed *nine* scheduled consultative examinations and that cannot be attributed to the ALJ's failure to develop the record, as Plaintiff suggests. "Courts in this Circuit have held that where a claimant fails to appear at a scheduled consultative examination without explanation, the ALJ has no further duty to develop the record." *Richard R. v. Comm'r of Soc. Sec.*, No. 6:23-CV-6346-LJV, 2024 WL 4064084, at *6 (W.D.N.Y. Sept. 5, 2024) (quoting *Perelli v. Comm'r of Soc. Sec.*, No. 18-CV-04370 (KAM), 2020 WL 2836786, at *5 (E.D.N.Y. June 1, 2020) (internal citations

omitted)).   In *Richard*, the court stated that "[i]n light of [plaintiff's] 'apparent lack of cooperation with regard to the development of the record, [he] cannot now prevail based upon a challenge to the adequacy of th[e] record.'"   *Id.* (quoting *Kratochvil v. Comm'r of Soc. Sec.*, No. 1:06-CV-1535 (LEK/VEB), 2009 WL 1405226, at *5 (N.D.N.Y. May 18, 2009); citing *Verge v. Saul*, No. 19-CV-543F, 2020 WL 5530377, at *4 (W.D.N.Y. Sep. 15, 2020) ("[p]laintiff's argument is without merit because the [p]laintiff failed to cooperate with the disability process by failing to attend any of the three scheduled consultative psychiatric evaluations despite both [p]laintiff and her attorney receiving notices that complied with the relevant regulations")); *Mallon v. Comm'r of Soc. Sec.*, No. 18-CV-0712MWP, 2020 WL 263654, at *1 (W.D.N.Y. Jan. 17, 2020) ("Having failed without excuse or explanation to attend the consultative examinations, Mallon 'cannot now prevail based upon a challenge to the adequacy of th[e] record.'" (quoting *Kratochvil*, 2009 WL 1405226, at *4, 5)); *see also Derek W. v. Comm'r of Soc. Sec.*, No. 1:20-CV-1437 (WBC), 2022 WL 16856672, at *5 (W.D.N.Y. Nov. 10, 2022) (noting that the regulations "caution[] that failure to attend a consultative examination, absent good reason, may result in a finding of not disabled" quoting 20 C.F.R. § 416.918, and that "failure to cooperate in obtaining evidence, will result in a decision being made based on information available" quoting § 416.916).

Here, a letter from counsel in the record provides varying excuses for Plaintiff's failure to attend some of the consultative examination appointments, with no reason at all

provided for two of the nine missed appointments. (Dkt. 3 at 379).[2]  At the hearing, the ALJ raised the issue of Plaintiff's failure to appear for the scheduled consultative examinations and invited counsel to question Plaintiff to supply reasons for the examinations not going forward. (*Id.* at 40). When asked by counsel why she failed to attend the consultative examinations, Plaintiff stated that she had a "high pain day," seemingly with respect to one of the cancelled appointments, but provided no additional information as to the remaining appointments and counsel did not further question Plaintiff on this point. (*Id.* at 47). On these facts, Plaintiff's failure to attend nine scheduled appointments over a 17-month period (some with absolutely no explanation), or make any concerted effort to reschedule, is unreasonable and cannot support her contention that the ALJ failed to develop the record.[3] *See Richard R,* 2024 WL 4064084, at *4 ("Here, on the other hand, and as more fully developed below, Richard did not attend his consultative examination, had plenty of time to reschedule, but never asked the ALJ to allow him to do that."); *Edgardo R. v. Saul*, No. 3:19-CV-01874SDV, 2021 WL 4472720, at *5 (D. Conn.

---

[2]    Specifically, counsel's December 19, 2022 letter indicates that Plaintiff's "May 10, 2021 exam was canceled due to fever and difficulty breathing; July 15, 2021 was cancelled due to exacerbation of pulmonary fibrosis; September 17, 2021 was cancelled due to transportation issues; November 19, 2021 was cancelled due to exposure to COVID with directions to quarantine by her doctor; January 17, 2022 exam was canceled due to snow; April 27, 2022 & June 30, 2022 exams were cancelled, but reasons are not clear based upon review of the file; September 8, 2022 exam was canceled due to kidney infection; and October 13, 2022 exam was rescheduled due to COVID diagnosis." (Dkt. 5 at 371).

[3]    Indeed, Plaintiff's counsel requested that Plaintiff be classified as a "compassionate allowance" and relieved from an obligation to appear at a consultative examination, (Dkt. 5 at 371), which is seemingly inconsistent with an argument that the lack of useful medical opinion evidence created a gap in the record that deprived the RFC of adequate evidentiary support.

Sept. 30, 2021) ("In light of plaintiff's failure to attend the consultative examinations and to fulfill his obligations to facilitate those consultations, the ALJ did not have any further duty to develop the record with respect to those consultants' records.").

In sum, it is clear from the written determination how the ALJ arrived at the assessed RFC, which is supported by substantial evidence in the record, and any failure to develop the record further was solely the result of Plaintiff's own conduct.  Accordingly, remand is not required on this basis.

## **CONCLUSION**

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 7) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt. 5) is denied.  The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:  September 25, 2025
          Rochester, New York

- 14 -